IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| SHIRLEY D. BURWELL-RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:12-cv-89-JAG |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Shirley D. Burwell-Rainey ("Plaintiff") is 46 years old and has limited work experience as a housekeeper. She alleges that she suffers from HIV, rheumatoid arthritis and fibroids. On January 2, 2009, Plaintiff applied for Supplemental Security Income ("SSI") with a disability onset date of December 31, 2002, under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for benefits. On January 26, 2011, the Appeals Council denied Plaintiff's request for review.

Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that she is disabled and presenting the Court with additional medical records. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 2-3.) On April 2, 2012, Plaintiff requested oral argument, which was granted and set for 2:30 P.M. on September 5, 2012. (Order Granting Motion for Oral Argument (ECF No. 17).) Although Plaintiff arrived 20 minutes late for the hearing, the Court heard oral argument, which consisted of Plaintiff arguing that her SSI claim was denied because her attorney failed to submit medical records to the ALJ.

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe Plaintiff's arguments. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (citations and internal quotation marks omitted); *Pearn v. Astrue*, No. 3:10cv427, 2011 WL 3236064, at *4 (E.D. Va. April 7, 2011) (construing a disability claimant's general challenge to the ALJ's decision as a challenge to the ALJ's RFC determination and step five denial of benefits). Having reviewed the parties' submissions and the entire record in this case as well as hearing oral argument in this matter, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 8) be DENIED; that Defendant's motion for summary judgment (ECF No. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

In his decision, the ALJ assigned limited weight to the non-treating and consultative state agency physicians' opinions and assessed the credibility of Plaintiff based on Plaintiff's medical records and activities of daily living ("ADLs"). (R. at 24-28.) In doing so, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. (R. at 24.) Because Plaintiff lodges a general complaint against the ALJ's decision,

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Plaintiff's medical history, the opinions of the non-treating and consultative state agency physicians, Plaintiff's testimony and the medical records that Plaintiff filed with this Court are summarized below.

## A.   Plaintiff's Education and Work History

Plaintiff completed the sixth grade and never earned a GED or took vocational training. (R. at 179.) In her Disability Report form, Plaintiff indicated that she worked as a housekeeper from 1993 to 2002 for eight hours a day, five days per week, earning $6.50 an hour. (R. at 174.) However, Plaintiff's FICA Earnings from 1993 to 2002 revealed that she earned $11,270.15 over the entire period. (R. at 157.) While Plaintiff performed some work as a housekeeper, she had no significant work history since at least 2002. (R. at 28, 43.)

## B.   Plaintiff's Medical History

In September 2008, Lloyd A. Bonner, M.D., documented that Plaintiff had acute low back pain as well as possible synovitis of the right hip. (R. at 241.) A few months later, a CT revealed "no fracture or other osseous abnormality of the pelvis or hips." (R. at 245.) Plaintiff tested HIV+ on December 29, 2008. (R. at 251.)

On January 14, 2009, Plaintiff complained of occasional numbness and tingling in her hands. (R. at 299.) She also stated that she had night sweats, blurred vision, a sore throat, abdominal pain and shortness of breath when angry. (R. at 299.) A few weeks later, Plaintiff complained of having pain all over, but an examination revealed only slight tenderness in the pelvic area. (R. at 295-97.) In May 2009, rheumatologist Lenore Buckley, M.D., diagnosed Plaintiff with fibromyalgia due to Plaintiff's abdominal tenderness, a limping gait and decreased ranges of motion. (R. at 259.)

3

In August 2009, Plaintiff sought treatment at the Richmond Community Hospital following a motor vehicle accident. (R. at 262.)  Plaintiff complained of back and neck pain, received a toradal injection and was prescribed pain medication. (R. at 272.)  An MRI of Plaintiff's spine revealed spina bifida occulta[2] and scoliosis.[3]  (R. at 281.)  Stacy Williams, D.O., attributed Plaintiff's back pain to a likely strain of the muscles or ligaments that support the spine. (R. at 268.)  She wrote that the injury was very common and that Plaintiff would likely feel better in a few days. (R. at 268.)

On October 5, 2009, an x-ray of Plaintiff's spine revealed lumbosacral spondylosis with L5 grade 1 spondylolisthesis[4] and spondylosis.[5]  (R. at 308.)  An x-ray taken of Plaintiff's spine a month later exposed scoliosis, degenerative disc disease at the L4-L5 and L5-S1 levels and anterior spondylolisthesis L4. (R. at 349.)  An x-ray of Plaintiff's hip demonstrated no fracture, dislocation or other abnormality. (R. at 351.)

From November 2009 to April 2010, Plaintiff received 20 skilled therapy sessions at Sheltering Arms to treat pain in the limbs, muscle weakness, a back disorder and lumbago. (R. at 367-98.)  During these sessions, Plaintiff performed a number of exercises and stretches, some of which she claimed caused increased pain. (R. at 316, 371, 391.)  At times, Plaintiff refused to ride a recumbent bike, because it caused her pain. (R. at 376, 391, 395.)  On another occasion,

---

[2] Spina bifida occulta is a neural tube defect "in which there is a defect of the vertebral arch without protrusion of the spinal cord or meninges." *Dorland's Illustrated Medical Dictionary* 1748 (32st ed. 2012).

[3] Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine." *Dorland's* at 1681.

[4] Spondylolisthesis is the "forward displacement . . . of one vertebra over another." *Dorland's* at 1754.

[5] Spondylosis is the "dissolution of a vertebrae." *Dorland's* at 1754.

4

she requested that she perform some or no exercises for that day. (R. at 393, 395.) Throughout

the sessions, Plaintiff required assistance for proper performance of all activities. (*See* R. at

387.) While initial reports remained optimistic about Plaintiff's improvement, later reports

questioned Plaintiff's motivation due to continued tardiness and missing appointments as well as

requests for passive treatments. (*See* R. at 318, 321-22, 367, 371-72, 376, 388, 390, 393-95.)

Ultimately, Sheltering Arms discharged Plaintiff to an independent home exercise program,

noting that her gait pattern had improved, but her objective findings and function had not

improved enough to warrant continued therapy. (R. at 398.)

On November 18, 2010, Plaintiff visited the West End Orthopedic Clinic complaining of

low back pain. (R. at 400.) An examination revealed a 5/5 strength in the lower extremities,

reflexes at 1+, a normal gait, normal balance and normal coordination. (R. at 400.)

## C.       The Opinion of Christopher Newell, M.D., Consultative Physician

On November 8, 2009, Plaintiff visited Christopher Newell, M.D., for a medical

consultative examination. (R. at 310.) Dr. Newell summarized Plaintiff's rheumatoid arthritis

and HIV+ diagnoses as well Plaintiff's reports of aching, sharp joint pain. (R. at 310.)

Plaintiff denied performing chores. (R. at 310.) Dr. Newell observed that Plaintiff had a flat

affect and a dysphoric mood. (R. at 311.)

Dr. Newell described Plaintiff's gait as mildly antalgic. (R. at 312.) He indicated that

Plaintiff had mild rheumatoid arthritis changes with tender and mildly swollen joints, a slight

decreased range of motion as well as tenderness in the back. (R. at 312.) Dr. Newell identified

six trigger points, but assessed Plaintiff's strength at 4/5. (R. at 312.) He diagnosed Plaintiff

with rheumatoid arthritis, fibromyalgia, depression and HIV (with no complications). (R. at

312.)

Dr. Newell opined that Plaintiff could stand and walk for two hours in an eight-hour workday, sit for four to six hours in an eight-hour workday, frequently carry 10 pounds, occasionally carry 10-20 pounds, occasionally bend, reach, handle, feel, grasp and finger. (R. at 312.) Plaintiff did not need any assistive devices to ambulate. (R. at 312.)

**D.      The Opinions of the Non-treating State Agency Physicians**

On April 15, 2009, non-treating state agency physician David Williams, M.D., completed a Physical RFC Assessment and determined that Plaintiff could perform light work, occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, occasionally climb stairs, balance, stoop, kneel, crouch, crawl and never climb ladders. (R. at 72-75.) On December 2, 2009, Tony Constant, M.D., a non-treating state agency physician, agreed with Dr. Williams' assessment on Plaintiff's limitations, but added that she was limited in handling. (R. at 84-88.) Dr. Constant also opined that Plaintiff could perform work at a medium exertional level. (R. at 88.)

**E.      Plaintiff's Statements**

On January 29, 2009, Plaintiff completed a Pain Questionnaire in which she marked that she had aching, stabbing, burning, throbbing, cramping and crushing pain. (R. at 189-90.) She indicated that her medication helped relieve her pain. (R. at 190.) That same day, Plaintiff completed a Fatigue Questionnaire. (R. at 191-92.) Plaintiff wrote that she felt fatigued every day and had to perform household chores with a cane. (R. at 191.) She could only walk about two city blocks before resting for ten minutes. (R. at 191.) Plaintiff slept four hours a night and napped at least three hours a day. (R. at 192.)

Plaintiff also completed a Function Report in which she wrote that she was in pain when she woke up in the morning and would typically perform household chores. (R. at 193.) She

6

marked that she cared for her granddaughter and readied her for school. (R. at 194.)  Plaintiff could no longer exercise and her pain kept her awake at night. (R. at 194.)  Plaintiff wrote that she prepared food two or three days a week, spending about one and a half hours preparing "complete meals." (R. at 195.)  She also indicated that she completed household chores such as making the bed, laundry, sweeping floors and raking the leaves. (R. at 195.)  For entertainment, Plaintiff watched television. (R. at 197.)  She marked that the pain limited her ability to lift, walk, climb stairs, understand, squat, sit, bend, kneel, use her hands, stand, complete tasks, get along with others and reach. (R. at 198.)

While attending physical therapy, Plaintiff admitted to bowling on August 25, 2009. (R. at 325.)  Plaintiff reported that her foot had gotten stuck and she twisted her leg. (R. at 325.)  During oral argument before the Court, however, Plaintiff testified that she had not been bowling, but rather hurt her back while she was bending over to tie her shoe while she watched her husband bowl.

On June 14, 2010, Plaintiff testified before an ALJ. (R. at 36-66.)  Plaintiff testified that she had not "worked anywhere for anyone . . . for even a single day or a single dollar" since her alleged onset date, but later admitted to having worked as a housekeeper in a nursing home "a few years back." (R. at 43.)  Plaintiff indicated that she experienced daily pain in her hands, back, legs, the bottom of her foot, knees, neck as well as her head and that she took prescription pills daily since 2002, but could not recall whether the medication helped the pain. (R. at 45.)  Plaintiff rated her pain at eight and a half out of a 10. (R. at 46.)  Plaintiff stated that she was not able to drive, because she could not grip the steering wheel and could not pick up a jar of jelly, because she would drop it. (R. at 42, 46.)  She could only stand for a half a minute or sit for two minutes before needing to adjust her position. (*See* R. at 46-47.)  She indicated that she needed

7

assistance from her husband to use the bathroom and that she could not walk a city block, although she had also never been prescribed any assistive devices.  (R. at 46-47, 49.)  Plaintiff admitted that her bedroom was on the second floor of a two-story house.  (R. at 40-41.)

Plaintiff testified that she had joint custody of her granddaughter, but that she just gave her grandchild "love."  (R. at 55-56.)  Plaintiff stated that she had not prepared food or shopped for groceries since 2002 and her husband took care of the household chores.  (R. at 47.)  She attended church on Mondays and Wednesdays.  (R. at 48.)  Plaintiff testified that she could not write due to pain in her hands.  (R. at 53.)  Although Plaintiff had been referred for physical therapy, Plaintiff stated that her physical therapists ended therapy because it did not work.  (R. at 50.)

After the ALJ's decision, Plaintiff submitted a letter to the Appeals Council, stating that she never missed an appointment to take her mother to dialysis and had "never told the physical therap[ist] that [she] forgot to do [her] exercises at home."  (R. at 223-24.)  Instead, Plaintiff wrote that she told the therapist "that some of the exercises [she] couldn't do because of the pain."  (R. at 223.)  She also indicated that the physical therapy ended, because the therapy did not help her arthritis, and that she was late to therapy on one occasion.  (R. at 224.)

F.      **Medical Evidence Submitted to the Court**

Plaintiff submitted 37 additional pages of her prescription list with her motion for summary judgment.  (Pl.'s Mem. at Exh. 1.)  She also submitted additional medical records from 2011 that document full strength and sensation in her lower extremities and her continued complaints of pain.  (Pl.'s Response to Answer (ECF No. 12) ("Pl.'s Resp. to Ans.") at Exh. 1.)  Plaintiff included additional physical therapy notes from 2011 and 2012 that indicated, among other things, that Plaintiff did not return to physical therapy.  (Pl.'s Resp. to Ans. at Exh. 1.)  On

8

June 10, 2012, Plaintiff submitted additional medical records from 2011 and 2012 to the Court. (Pl.'s Resp. to Def.'s Mot. for Sum. J. (ECF No. 16) ("Pl.'s Resp. to Mot.") at Exh. 1.)  These records documented "degenerative changes" in Plaintiff's extremities.  (Pl.'s Resp. to Mot. at Exh. 1.)  During the September 5, 2012 hearing, Plaintiff submitted a current schedule for her physical therapy sessions to the Court.  (ECF No. 19-1.)

## II. PROCEDURAL HISTORY

Plaintiff filed for SSI on January 2, 2009, claiming disability due to HIV, rheumatoid arthritis and fibroids with an alleged onset date of December 31, 2002.  (R. at 21, 174.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[6]  (R. at 21, 77, 90.)  On June 14, 2010, Plaintiff testified before an ALJ.  (R. at 34-66.)  On July 8, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.  (R. at 21-29.)  The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on January 26, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (*See* R. at 1-3.)  On September 5, 2012, this Court heard oral argument on the matter.

---

[6] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA.  20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. QUESTIONS PRESENTED

Was the Commissioner's evaluation of the opinion of Plaintiff's treating physician supported by substantial evidence on the record and the application of the correct legal standard?

Was the Commissioner's evaluation of Plaintiff's credibility supported by substantial evidence on the record and the application of the correct legal standard?

Did the Plaintiff present sufficient new evidence to warrant a "Sentence Six" remand?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks

omitted)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  *Hancock*, 667 F.3d at 476 (citation omitted).  While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.  *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[7]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  *Id.*  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe

---

[7] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R.  Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[8] based on an assessment of the claimant's residual functional capacity ("RFC")[9] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in

---

[8] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[9] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

12

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5).  The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  *Id.*  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

In his opening paragraph, the ALJ noted that he held the record open for one week so Plaintiff's counsel could submit additional evidence.  (R. at 21.)  The ALJ received that evidence and it was made a part of the record as Exhibits 12F and 13F.  (R. at 21.)  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 2, 2009, the date of her application.  (R. at 23.)  At step two, the ALJ determined that Plaintiff was severely impaired from fibromyalgia, rheumatoid arthritis, scoliosis, degenerative changes at the L4-5, L5-S1 level as well as L4-5 spondylolisthesis of the lumbosacral spine and obesity.  (R. at 23-24.)  At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. at 24.)

The ALJ then determined that Plaintiff had the RFC to perform the full range of sedentary work.  (R. at 24.)  The ALJ summarized Plaintiff's statements, which included

complaints of hand and back pain that allegedly precluded her from bending, sitting or standing for long periods of time, lifting weights over 10 pounds or using her hands. (R. at 25.) Plaintiff stated that she had chronic fatigue and took medication for hypertension as well as pain. (R. at 25.)

The ALJ summarized Plaintiff's written statements about her ability to take care of her personal needs, prepare her own meals, make the bed, launder her clothes, sweep floors, rake leaves, shop once a month for two hours, pay bills, handle her bank accounts, watch television and walk without an assistive device. (R. at 25.) In contrast, the ALJ noted that at the hearing, Plaintiff testified that she lived with her husband and daughter, as well as her eight-year-old granddaughter and slept on the second floor of a two-story house. (R. at 25.) Plaintiff rated her pain at an eight and a half out of a ten, regardless of medication, and that, as a result of her pain, she had trouble holding a pen to write, holding a telephone, preparing food, sitting two minutes, standing one minute, walking one city block, picking up a jar of jelly, shopping, cleaning, performing yard work, babysitting as well as using the bathroom. (R. at 25.) However, she could go to church twice a week, watch television and socialize with her family. (R. at 25.) Plaintiff attempted to bowl, but hurt herself. (R. at 25.) Plaintiff stopped attending physical therapy sessions, because they did not help her. (R. at 25.)

The ALJ then noted that the earliest date of treatment for Plaintiff's illnesses in the record was from September 2008. (R. at 26.) The ALJ mentioned Plaintiff's HIV+ stage one diagnosis, arthritis in her right side, occasional numbness and tingling in her hands, diffuse abdominal tenderness, limping gait, decreased range of motor motion and fibromyalgia diagnosis. (R. at 26.) Plaintiff also complained of back, muscle, knee and leg pain from motor vehicle accidents. (R. at 26.) X-rays of Plaintiff's left hip revealed nothing, while her lumbosacral spine revealed

14

scoliosis, degenerative changes to her spine and spondylolisthesis. (R. at 26.) The ALJ also summarized Plaintiff's physical therapy sessions from November 2009 through April 2010, at which time Plaintiff's motivations for treatment were questioned as she was chronically late and had not improved enough to continue therapy. (R. at 27.) The ALJ indicated that Plaintiff's treatment had been conservative and Plaintiff had not been hospitalized since her application. (R. at 27.) He also noted that Plaintiff's statements and medical records were contradictory at times. (R. at 27.)

The ALJ then assigned little weight to the opinions of the non-treating state agency physicians, who determined that Plaintiff had the RFC for light work with limitations, because they did not treat Plaintiff. (R. at 28.) The ALJ also gave little weight to the consultative examiner who opined that Plaintiff had the RFC for light work with limitations, because Plaintiff's admitted activities were not consistent with the examiner's mild symptoms observed. (R. at 28.)

At step four, the ALJ assessed that Plaintiff had no past relevant work. (R. at 28.) Next, considering Plaintiff's age, marginal education, ability to communicate in English, lack of work experience and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 28-29.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from January 2, 2009. (R. at 29.)

Plaintiff complains that she is disabled. (Pl.'s Mem. at 8-12.) Plaintiff's assertion is construed as a challenge to the ALJ's RFC assessment and as an assertion that substantial evidence did not support the ALJ's credibility determination and that the ALJ improperly weighed the opinion evidence. Additionally, the Court addresses Plaintiff's additional evidence as a request for a "sentence six" remand. The Commissioner disagrees with Plaintiff and asserts

15

that substantial evidence supported the ALJ's decisions.  (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 8-12.)

At the oral argument hearing before this Court, Plaintiff also argued that her attorney failed to submit medical records in a timely matter to the ALJ, which she insisted was a direct cause to her SSI claim being denied.  However, the ALJ held the record open for one week so Plaintiff's counsel could submit additional evidence, which was received and made a part of the record as Exhibits 12F and 13F.  (R. at 21.)  Therefore, Plaintiff's counsel was not the cause of the ALJ's denial of Plaintiff's claim.

**A.      Substantial evidence supported the ALJ's assignment of weight to the medical opinions.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

The ALJ assigned little weight to the opinions of the non-treating state agency physicians and Dr. Newell. (R. at 28.) Drs. Williams and Newell opined that Plaintiff could perform light work with some limitations. (R. at 72-75, 312.) Dr. Constant opined that Plaintiff could perform work at a medium exertional level. (R. at 88.) Instead of assessing that Plaintiff could perform light or medium level work, the ALJ instead determined that Plaintiff could perform the full range of sedentary work, (R. at 24), a less exertional level of work than those opined by the physicians. 20 C.F.R. § 416.967(a). Thus, the ALJ did not err when he assigned little weight to the opinions of the physicians and assessed Plaintiff's RFC at a lower level than those physicians' opinions.

**B.      Substantial evidence supported the ALJ's evaluation of Plaintiff's credibility.**

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-7p; 20 C.F.R.

§§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

Plaintiff's statements were contradictory in nature. While Plaintiff complained of constant pain and fatigue, she also admitted to performing household chores, caring for her granddaughter and preparing meals two or three days a week in 2009. (R. at 189-91, 193-95.) Plaintiff also admitted to hurting herself while bowling in 2009. (R. at 325.) However, in 2010 Plaintiff testified that she had not prepared or shopped for food since 2002 and that her husband took care of the household chores. (R. at 47.)

Although Plaintiff complained of hip pain, an x-ray demonstrated no fracture, dislocation or other abnormality. (R. at 241, 245, 351.) Similarly, patient notes revealed relatively normal gait, strength and reflexes, despite Plaintiff's complaints of high levels of pain. (R. at 295-97,

18

400.)  Plaintiff was referred for physical therapy, but she stopped attending because she lacked

motivation and missed or arrived late to appointments.  (R. at 318, 321-22, 367, 393-94.)

This Court must give great deference to the ALJ's credibility determinations.  *See*

*Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997).  The Fourth Circuit determined that

"[w]hen factual findings rest upon credibility determinations, they should be accepted by the

reviewing court absent 'exceptional circumstances.'"  *Id.*  (quoting *NLRB v. Air Prods. &

Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's

factual findings and credibility determinations unless "'a credibility determination is

unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason

at all.'"  *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Because substantial evidence supported his decision, the ALJ did not err in determining that

Plaintiff was not disabled under the Act.

C.     **Plaintiff's new evidence does not support a "Sentence Six" remand.**

In determining whether the ALJ's decision was supported by substantial evidence, a court

cannot consider evidence that was not presented to the ALJ.  *Smith v. Chater*, 99 F.3d 635, 638

n.5 (4th Cir. 1996) (internal citations omitted).  Although the Court cannot consider evidence

that was not presented to the ALJ, the Act allows a court to remand a case for reconsideration in

two situations.  42 U.S.C. § 405(g).  The first is a "sentence four" remand, which provides that

the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Commissioner of Social Security with or

without remanding the cause for a rehearing."  *Id.*

The second is a "sentence six" remand, which provides that the court "may at any time

order additional evidence to be taken before the Commissioner of Social Security, but only upon

19

a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*; *see also Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (a reviewing court may remand a case on the basis of newly discovered evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time that the application was first filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence). Because Plaintiff has offered new evidence to the Court, the Court will address whether Plaintiff has fulfilled the requirements to justify a "sentence six" remand.

New evidence must relate to the determination of disability *at the time that the application was first filed*, and it must not concern evidence of a later-acquired disability, or of the "subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec'y of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982); *see also Borders*, 777 F.2d at 955. Evidence must also be material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him. *Borders*, 777 F.2d at 955-56 (citation and internal quotation marks omitted).

Plaintiff submitted medical records dated 2011 and 2012 and medical records that were already submitted to the ALJ. While some records documented "degenerative changes" in Plaintiff's extremities, (Pl.'s Resp. to Mot. at Exh. 1.), these patient notes were nonetheless dated after the July 8, 2010 decision of the ALJ. If anything, these records indicate only a "subsequent

20

deterioration of the previously non-disabling condition," *Szubak*, 745 F.2d at 833, and do not merit a "sentence six" remand.

## VI.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion for remand (ECF No. 8) be DENIED; that Defendant's motion for summary judgment (ECF No. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated:  September 7, 2012

21